UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS
KANSAS CITY DIVISION

FRED NEKOUEE, individually,        :
                                   :
           Plaintiff,         :
                                   :
vs.                              :  Case No. 2:19-cv-02778
                                   :
PARKWAY VF LLC,          :
a New York limited liability company;  :
                                 :
JO-ANN STORES, LLC, an Ohio limited  :
liability company;            :
                                 :
and                            :
                                 :
HARBOR FREIGHT USA, INC., a Delaware  :
corporation;              :
                                 :
           Defendants.      :
_____/

## COMPLAINT

(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, as a mobility impaired individual (sometimes referred to as "Plaintiff"), hereby sues the Defendants, PARKWAY VF LLC, a New York limited liability company; JO-ANN STORES, LLC, an Ohio limited liability company; and HARBOR FREIGHT USA, INC., a Delaware corporation, sometimes referred to as "Defendants"); for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.      Defendant PARKWAY VF LLC owns the Parkway Shopping Center with an address of 11215 Shawnee Mission Parkway, Shawnee, Kansas 66203, in Johnson County

("Parkway Shopping Center").

3.     Defendant JO-ANN STORES, LLC's store, JOANN, is located in Parkway Shopping Center ("JOANN").

4.     Defendant HARBOR FREIGHT USA, INC.'s store, Harbor Freight, with an address of 11219 Shawnee Mission Parkway, Shawnee, Kansas 66203, is located in Parkway Shopping Center ("Harbor Freight").

5.     City Thrift is located in Parkway Shopping Center.

6.     Venue is proper in the District of Kansas because venue lies in the judicial district of the situs of the Parkway Shopping Center.   The Defendants' Parkway Shopping Center, JOANN, and Harbor Freight are located in and do business within this judicial district.

7.     Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

8.     Defendants each own, lease, lease to, or operate a place of public accommodation as defined by the ADA, 42 U.S.C. § 12181(7)(E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

9.     Parkway Shopping Center is a shopping center.

10.     Parkway Shopping Center is a place of public accommodation.

11.     JOANN is a sales establishment.

12.     Harbor Freight is a sales establishment.

13.     JOANN is a place of public accommodation.

14.     Harbor Freight is a place of public accommodation.

15.     City Thrift is a place of public accommodation.

16.     Defendants are each responsible for complying with the obligations of the ADA.

17.     Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis, weak limbs, and requires the use of a wheelchair for mobility.

18.     Mr. Nekouee travels to the Kansas City area every three to six months to accompany his brother at heavy equipment auctions, or to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to visit his uncle or cousin who live in such area.

19.     Fred Nekouee has visited, bought goods, and sought to avail himself of the services at the Parkway Shopping Center which forms the basis of this lawsuit on July 13, 2018; July 14, 2018; February 2, 2019; and May 12, 2019; and he plans to return to the property to avail himself of the goods and services offered to the public at the property since it is close to and convenient to the heavy equipment auction and dealerships, and to his uncle and cousin he visits in the Kansas City area.

20.     He visited the Kansas City area in March 2018, July 2018, February 2019, May 2019 and September 2019 and he has plans to return to the Kansas City area in March 2020.

21.     Fred Nekouee visited and bought goods at JOANN on July 13, 2018 and on May 12, 2019.

22.     Fred Nekouee visited and bought goods at City Thrift on July 13, 2018; February 2, 2019; and on May 12, 2019.

23.     Fred Nekouee visited and bought a ratchet tie at Harbor Freight on July 14, 2018.

24.     Fred Nekouee plans to return to Parkway Shopping Center to avail himself of the goods and services offered to the public at Parkway Shopping Center, JOANN, City Thrift, and

Harbor Freight.

25.     The Plaintiff has definite plans to return to the area and to Parkway Shopping Center, JOANN, City Thrift, and Harbor Freight in March 2020.

26.     The Parkway Shopping Center, JOANN, City Thrift, and Harbor Freight are close to the hotels he stays at in the area and are close to the heavy equipment auction and dealerships he visits.

27.     The Plaintiff likes the broad range of fabric and craft items for sale at JOANN in Parkway Shopping Center.

28.     The Plaintiff plans to return to JOANN to shop.

29.     The Plaintiff likes the wide range of inexpensive goods for sale at City Thrift.

30.     The Plaintiff plans to return to City Thrift to browse its items for sale.

31.     The Plaintiff likes hardware and tool stores like Harbor Freight.

32.     The Plaintiff plans to return to Harbor Freight to browse and to buy tools or hardware.

33.     For the reasons set forth in paragraphs 18-33 and 47, Fred Nekouee plans to return to the Parkway Shopping Center.

34.     The Plaintiff has encountered architectural barriers at Parkway Shopping Center.

35.     The barriers to access that the Plaintiff encountered at Parkway Shopping Center have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access Parkway Shopping Center, and have impaired his use of the restrooms there.

36.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

37.     The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

38.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

39.     On his visit to Parkway Shopping Center, the Plaintiff encountered excessively steep slopes in its parking lot.

40.     The cross slopes of access aisles serving the parking spaces for disabled patrons in front of JOANN, City Thrift, and Harbor Freight are steeper than 1:48 and are also steeper than 3.1%.

41.     The cross slope of the walking surface in front of Harbor Freight on the accessible route to the entrance of Harbor Freight is steeper than 1:48 and also steeper than 3.1%.

42.     The Plaintiff encountered and observed barriers to access in the family restroom in JOANN.

43.     The Plaintiff encountered and observed barriers to access in the men's restroom in Harbor Freight.

44.     The Plaintiff encountered and observed barriers to access in the men's restroom in City Thrift.

45.     The Plaintiff is deterred from visiting Parkway Shopping Center even though he enjoys its goods, because of the difficulties he will experience there until Parkway Shopping Center is made accessible to him in a wheelchair.

46.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to Parkway

Shopping Center as described but not necessarily limited to the allegations in paragraph 52 of this Complaint.  Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendants.

47.     Fred Nekouee desires to visit Parkway Shopping Center not only to avail himself of the goods and services available at Parkway Shopping Center but to assure himself that Parkway Shopping Center is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of Parkway Shopping Center without fear of discrimination.

48.     The Defendants have discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

49.     The Defendants have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

50.     Physical conditions that exist at Parkway Shopping Center are accurately described in each romanette "(i)" in each lettered subparagraph of paragraph 52 below

51.     Preliminary inspections of Parkway Shopping Center show that violations of the ADA exist as set forth in paragraph 52 below.

52.     The violations of the ADA that Fred Nekouee personally encountered or observed at Parkway Shopping Center include, but are not limited to:

**PARKING**

a.     (i) In the parking lot in front of City Thrift, the parking space for disabled patrons shown in the photograph below has a cross slope steeper than 1:48 and steeper than 3.1%.

(ii) This section of the parking space for disabled patrons has a cross slope steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) While moving in his wheelchair, the Plaintiff encountered this slope and it made his wheelchair unstable, and it deters him from visiting City Thrift and the Parkway Shopping Center.   (iv) The action required to reduce the slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.



b.   (i) In the parking lot in front of City Thrift, the parking space for disabled patrons shown in the photograph below has a cross slope steeper than 1:48 and steeper than 3.1%. (ii) This section of the parking space for disabled patrons has a cross slope steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) While moving in his wheelchair, the Plaintiff encountered this slope and it made his

wheelchair unstable, and it deters him from visiting City Thrift and the Parkway Shopping Center.   (iv) The action required to reduce the slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.



c.   (i) In the parking lot in front of Harbor Freight, the parking space for disabled patrons shown in the photograph below has a cross slope that is steeper than 1:48 and steeper than 3.1%.   (ii) This parking space for disabled patrons has a cross slope steeper than 1:48 and as steep as about 4%, in violation of Federal Law 2010, ADAAG § 502.4. (iii) The Plaintiff encountered the slope of this parking space for disabled patrons, it made his wheelchair unstable, and it deters him from visiting the Parkway Shopping Center and Harbor Freight.   (iv) The action required to reduce the slope of this parking space is easily

accomplishable and able to be carried out without much difficulty or expense.



d.   (i) In the parking lot in front of Harbor Freight, the parking space for disabled patrons identified with van accessible signage shown in the photograph below has a cross slope that is steeper than 1:48 and steeper than 4%.   (ii) This parking space for disabled patrons has a cross slope steeper than 1:48 and as steep as about 5%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered the slope of this parking space for disabled patrons, it made his wheelchair unstable, and it deters him from visiting the Parkway Shopping Center and Harbor Freight.   (iv) The action required to reduce the slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.



e.   (i) In the parking lot in front of City Thrift, the parking space for disabled patrons shown in the photograph below has a cross slope steeper than 1:48 and steeper than 3.1%. (ii) This section of the parking space for disabled patrons has a cross slope steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) While moving in his wheelchair, the Plaintiff encountered this slope and it made his wheelchair unstable, and it deters him from visiting City Thrift and the Parkway Shopping Center.   (iv) The action required to reduce the slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.



f.   (i) In the parking lot in front of City Thrift, the access aisles serving the parking spaces for disabled patrons have cross slopes steeper than 1:48 and steeper than 3.1%.   (ii) These access aisles have cross slopes steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered these cross slopes of these access aisles for disabled patrons, they made his wheelchair unstable, and they deter him from visiting Parkway Shopping Center and City Thrift.   (iv) The actions required to reduce the slopes of these access aisles are easily accomplishable and able to be carried out without much difficulty or expense.

g.   (i) In the parking lot in front of JOANN, the access aisle shown in the photograph below serving parking spaces for disabled patrons has a cross slope steeper than 1:48 and

steeper than 3.1%.   (ii) This access aisle has cross slope steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered this cross slope of this access aisle for disabled patrons, it made his wheelchair unstable, and it deters him from visiting Parkway Shopping Center and JOANN.   (iv) The action required to reduce the slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.



h.   (i) In the parking lot in front of Harbor Freight, the access aisle serving parking spaces for disabled patrons has a cross slope steeper than 1:48 and steeper than 3.1%.   (ii) This access aisle has a cross slope steeper than 1:48 and steeper than 3.1%, in violation of

Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered this cross slope of this access aisle for disabled patrons, it made his wheelchair unstable, and it deters him from visiting Parkway Shopping Center and Harbor Freight.   (iv) The action required to reduce the slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

i.   (i) The cross slope of the walking surface or sidewalk in front of Harbor Freight near the shopping cart stall is steeper than 1:48 and steeper than 3.1%.   (ii) The cross slope of this walking surface along the accessible route to the entrance to Harbor Freight is steeper than 1:48 and as steep as about 4%, in violation of Federal Law 2010, ADAAG § 403.3.   (iii) While moving in his wheelchair toward the entrance of Harbor Freight, the Plaintiff encountered this cross slope, it made his wheelchair unstable, and it deters him from shopping at Harbor Freight.   (iv) The action required to reduce the slope of this walkway is easily accomplishable and able to be carried out without much difficulty or expense.

j.   (i) The width of the walking surface in front of Harbor Freight and between the fixed trash can and the shopping cart stall is less than 36 inches wide.   (ii) The width of this walking surface along the accessible route to Harbor Freight is only about 31 inches wide and is less than the minimum required width of 36 inches between the fixed trash can and shopping cart stall, in violation of Federal Law 2010, ADAAG § 403.5.1.   (iii) Due to the lack of width of this walking surface, the Plaintiff required assistance to maneuver his wheelchair to go around this section of the walkway to enter Harbor Freight.   (iv) The actions required to relocate the fixed trash can or the shopping cart stall and to put a written policy in place not to restrict the walkway along the accessible route to Harbor Freight with

a shopping cart stall near a fixed trash can are easily accomplishable and able to be carried out without much difficulty or expense.

k.     (i) The slope of the curb ramp flare in front of Harbor Freight is steeper than 1:10 (10%) and steeper than 11%.   (ii) This curb ramp flare is steeper than the maximum allowed slope of 1:10 and is steeper than 13%, in violation of Federal Law 2010, ADAAG § 406.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this curb ramp flare and he had to maneuver his wheelchair to avoid it and to prevent it from tipping over his wheelchair.   (iv) The action required to reduce the slope of this curb ramp flare is easily accomplishable and able to be carried out without much difficulty or expense.

l.     (i) The slope of the curb ramp flare in front of City Thrift is steeper than 1:10 (10%) and steeper than 11%.   (ii) This curb ramp flare is steeper than the maximum allowed slope of 1:10 and is steeper than 17%, in violation of Federal Law 2010, ADAAG § 406.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this curb ramp flare and he had to maneuver his wheelchair to avoid it and to prevent it from tipping over his wheelchair.   (iv) The action required to reduce the slope of this curb ramp flare is easily accomplishable and able to be carried out without much difficulty or expense.

**FAMILY RESTROOM IN JOANN**

m.   (i) The force needed to open the entrance door to the family restroom in JOANN is greater than 5 pounds.   (ii) The force needed to open the entrance door to this restroom is about 10 pounds and more than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this entrance door, the Plaintiff required assistance in his wheelchair to open this door to enter

the family restroom in JOANN.   (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

n.   (i) The length of time for the entrance door to the family restroom in JOANN   to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The length of time for the entrance door to the family restroom in JOANN to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than the minimum required time of 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) Due to the short time for this entrance door to the family restroom in JOANN to close, this door closed on his wheelchair before the Plaintiff could not make it through the door.   (iv) The action required to adjust the door closer to this door is easily accomplishable and able to be carried out without much difficulty or expense.

o.   (i) In the family restroom in JOANN, the operation of the door lock to the entrance door requires tight grasping, pinching, or twisting of the wrist.   (ii) The operation of this door lock requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   (iii) The Plaintiff tried but could not operate this door lock with a closed fist or loose grip.   (iv) The action required to change the lock and hardware on this door is easily accomplishable and able to be carried out without much difficulty or expense.

p.   (i) In the family restroom in JOANN, the accessible toilet compartment door swings into the compartment and the compartment is less than 56 inches wide.   (ii) The accessible toilet compartment door swings into the compartment and the compartment is less than 56 inches wide and is only about 51 inches wide, in violation of Federal Law

2010, ADAAG § 604.8.1. (iii) Due to the door swinging into the accessible toilet compartment and its width, the Plaintiff required assistance to maneuver his wheelchair into this compartment to use the toilet. (iv) The action required to increase the width of this accessible toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

q.    (i) In the family restroom in JOANN, the front of the rim of the sinks are higher than 34 inches above the floor. (ii) The front of the rim of these sinks are higher than a maximum of 34 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 606.3. (iii) Due to the height of the front rim of the sink above the floor, the Plaintiff had difficulty when he used a sink in the family restroom in JOANN. (iv) The action required to reduce the height of these sinks is easily accomplishable and able to be carried out without much difficulty or expense.

r.    (i) The centerline of where the toilet paper is dispensed in the family restroom in JOANN is not between 7 and 9 inches from the front of the toilet. (ii) The centerline of where the toilet paper is dispensed from this toilet paper dispenser is not between 7 and 9 inches from the front of the toilet, in violation of Federal Law 2010, ADAAG § 604.7. (iii) Due to the location of this toilet paper dispenser, the Plaintiff tried but could not reach toilet paper from a normal sitting position on the toilet. (iv) The action required to relocate and install an ADA compliant toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

s.    (i) In the family restroom in JOANN, the operation of the door latch to the accessible toilet compartment requires tight grasping, pinching, or twisting of the wrist. (ii) The operation of the door latch to the accessible toilet compartment requires tight

grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.  (iii) The Plaintiff tried but could not operate this door latch with a closed fist or loose grip, and so, he could not secure this door in a closed position when he used the toilet.  (iv) The action required to replace the door latch hardware on this door to the accessible toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN CITY THRIFT**

t.  (i) The force needed to open the entrance door to the men's restroom in City Thrift is greater than 5 pounds.  (ii) The force needed to open the entrance door to the men's restroom in City Thrift is about 12 pounds and more than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.  (iii) Due to the force necessary to open this entrance door, the Plaintiff required assistance in his wheelchair to open this door to enter the men's restroom.  (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

u.  (i) In the men's restroom in City Thrift, a door pull is not provided on both sides of the door to the toilet compartment near the latch.  (ii) A door pull is not provided on both sides of this door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.  (iii) Due to the lack of a door pull on both sides of the door to the accessible toilet compartment, the Plaintiff could not fully close the door when he used the toilet. (iv) The action required to install door pulls on both sides of the door to the accessible toilet compartment is easily accomplishable and able to be carried out without much difficulty

or expense.

v.    (i) In the men's restroom in City Thrift, the operation of the door latch to the accessible toilet compartment requires tight grasping, pinching, or twisting of the wrist. (ii) The operation of the door latch to the accessible toilet compartment requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   (iii) The Plaintiff tried but could not operate this door latch with a closed fist or loose grip, and so, he could not secure this door in a closed position when he used the toilet.   (iv) The action required to replace the door latch hardware on this door to the accessible toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

w.    (i) In the men's restroom in City Thrift, the rear wall grab bar in the accessible toilet compartment is less than 36 inches long.   (ii) The rear wall grab bar in the accessible toilet compartment is less than a minimum of 36 inches long and is only about 30 inches long, in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii) Due to the length of this rear wall grab bar, the Plaintiff had difficulty using it to transfer himself from his wheelchair to sit on the toilet.   (iv) The action required to replace this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

x.    (i) In the men's restroom in City Thrift, the side wall grab bar in the accessible toilet compartment is less than 42 inches long.   (ii) This side wall grab bar in the accessible toilet compartment is less than a minimum of 42 inches long and is only about 36 inches long, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to the short length of this side wall grab bar, the Plaintiff had difficulty using it to transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to replace this side wall

grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

y.    (i) In the men's restroom in City Thrift, the side wall grab bar in the accessible toilet compartment does not extend a minimum of 54 inches from the rear wall.   (ii) This side wall grab bar does not extend a minimum of 54 inches from the rear wall and only extends about 50 inches from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to this side wall grab bar extending less than 54 inches from the rear wall, the Plaintiff had even more difficulty using it to transfer himself from his wheelchair to the sit on the toilet and back again.   (iv) The action required to replace this side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

z.    In the men's restroom in City Thrift, the water supply and drain pipes under the sinks are not insulated.   (ii) As shown in the photograph below, the water supply and drain pipes under the sinks in the men's restroom in City Thrift are not insulated, in violation of Federal Law 2010, ADAAG § 606.5.   (iii) Due to the lack of insulation on these drain and water supply pipes under the sinks in the men's restroom, the Plaintiff risked skin burns and injury to his legs when he used the sink.   (iv) The action required to insulate the drain and water supply pipes under these sinks is easily accomplishable and able to be carried out without much difficulty or expense.



aa.    (i) In the men's restroom in City Thrift, the centerline of where the toilet paper

dispenser dispenses toilet paper is not between 7 and 9 inches from the front of the toilet.

(ii) The centerline of where this this toilet paper dispenser dispenses toilet paper is not

between 7 and 9 inches from the front of the toilet, in violation of Federal Law 2010,

ADAAG § 604.7.   (iii) Due to the location of where this toilet paper dispenser dispenses

toilet paper, the Plaintiff tried but could not reach toilet paper from a normal sitting position

on the toilet.   (iv) The action required to replace this toilet paper dispenser with an ADA

compliant toilet paper dispenser is easily accomplishable and able to be carried out without

much difficulty or expense.

bb. (i) In the men's restroom in City Thrift, the coat hook is higher than 48 inches

above the floor.   (ii) This coat hook is higher than 48 inches above the finish floor and is

about 62 inches above the finish floor, and outside of the reach range of an individual in a

wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The Plaintiff tried but could not use this coat hook due to its height above the floor, and it deters him from visiting City Thrift and Parkway Shopping Center.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN HARBOR FREIGHT**

cc.  (i) The force needed to open the entrance door to the men's restroom in Harbor Freight is greater than 5 pounds.   (ii) The force needed to open the entrance door to the women's restroom in Harbor Freight is about 8 pounds and more than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this entrance door, the Plaintiff had difficulty trying to enter the men's restroom in his wheelchair.   (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

dd.  (i) In the men's restroom in Harbor Freight, the water supply and drain pipes under the sink are not insulated.   (ii) As shown in the photograph below, the water supply and drain pipes under the sink in this restroom are not insulated, in violation of Federal Law 2010, ADAAG § 606.5.   (iii) Due to the lack of insulation of these water supply and drain pipes under the sink in this restroom, the Plaintiff risked skin burns and injury to his legs when he used the sink.   (iv) The action required to insulate the water supply and drain pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.



ee.    (i) In the men's restroom in Harbor Freight, the door latch is higher than 48 inches above the floor.   (ii) This door latch is higher than a maximum of 48 inches above the finish floor and is about 57 inches above the finish floor, outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 404.2.7.   (iii) Due to its height above the floor, the Plaintiff tried but could not reach this latch to lock the door.   (iv) The action required to relocate and replace this door latch with an ADA compliant latch is easily accomplishable and able to be carried out without much difficulty or expense.

ff.    (i) In the men's restroom in Harbor Freight, the toilet seat cover dispenser outlet is higher than 48 inches above the floor.   (ii) This toilet seat cover dispenser outlet is higher than 48 inches above the finish floor and is as high as about 56 inches above the finish floor, outside of the reach range of an individual in a wheelchair, in violation of

Federal Law 2010, ADAAG § 308.2.1.   (iii) The Plaintiff tried but could not reach a toilet seat cover due to the height of the toilet seat cover dispenser outlet above the floor.   (iv) The action required to relocate this toilet seat cover dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

gg.   (i) In the men's restroom in Harbor Freight, the space between the bottom of the side wall grab bar and the top of the toilet paper dispenser is less than 1.5 inches.   (ii) The space between the bottom of the side wall grab bar and the top of the toilet paper dispenser is less than a minimum of 1.5 inches, in violation of Federal Law 2010, ADAAG § 609.3. (iii) Due to the lack of space between the bottom of this side wall grab bar and the top of this toilet paper dispenser, the Plaintiff could not grip a portion of this side wall grab bar, making it very difficult to transfer himself to the toilet from his wheelchair and back again. (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

hh.   (i) In the men's restroom in Harbor Freight, the centerline of where the toilet paper dispenser dispenses toilet paper is not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of where this this toilet paper dispenser dispenses toilet paper is not between 7 and 9 inches from the front of the toilet and is about 18 inches from the front of the toilet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the location of where this toilet paper dispenser dispenses toilet paper, the Plaintiff tried but could not reach toilet paper from a normal sitting position on the toilet.   (iv) The action required to replace this toilet paper dispenser with an ADA compliant toilet paper dispenser and locate it in a proper position is easily accomplishable and able to be carried out without much difficulty or expense.

53.     All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

54.     The discriminatory violations described in paragraph 52 are not an exclusive list of the Defendants' ADA violations.   Plaintiff requires the inspection of the Defendants' places of public accommodation in order to photograph and measure areas to which barriers prevented his access.

55.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' building and its facilities, and have otherwise been discriminated against and damaged by the Defendants because of the Defendants' ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

56.     Defendants have discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

57.     Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence

of auxiliary aids and services.

58.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted.

59.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

60.     Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities are ones which were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

61.     Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendants.

62.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendants to alter Parkway Shopping

Center, JOANN, City Thrift, and Harbor Freight, the parking lot, access aisles and walkways to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendants cure their violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.      The Court issue a Declaratory Judgment that determines that the Defendants at the commencement of the subject lawsuit are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.      Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby

designates Kansas City, Kansas as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze_____
Robert J. Vincze (KS #14101)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*